IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-732-FL

| | |
|---|---|
| EMMERLI WILCOXSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **AMENDED** |
| THE CITY OF RALEIGH, RALEIGH ) | **MEMORANDUM AND** |
| POLICE DEPARTMENT, DIANA ) | **RECOMMENDATION** |
| PAINTER, CHARLES MATTHEWS, II, ) | |
| PHILIP D. MATTHEWS, and HARRY ) | |
| DOLAN, *in their individual and official* ) | |
| *capacities*, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the following motions: (1) a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, by Defendants the City of Raleigh and the Raleigh Police Department [DE-35], to which Plaintiff Emmerli Wilcoxson filed a response in opposition [DE-39]; (2) a motion to dismiss, pursuant to Rule 12(b)(6), by Defendant Charles Matthews, II [DE-41], to which Plaintiff filed a response in opposition [DE-52]; and (3) a motion to dismiss, pursuant to Rule 12(b)(6), by Defendant Harry Dolan [DE-54], to which Plaintiff filed a response in opposition [DE-58]. All briefing is complete and the motions are ripe for disposition. The parties have not consented to the jurisdiction of the magistrate judge; therefore, Defendants' motions to dismiss are considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons more fully set forth below, it is recommended that the motion to dismiss by the City of Raleigh and the Raleigh Police Department

be granted, the motion to dismiss by Charles Matthews, II, be denied, and the motion to dismiss by Harry Dolan be granted.

## I. PROCEDURAL BACKGROUND

On October 18, 2013, Plaintiff filed an Amended Complaint alleging federal claims under 42 U.S.C. §§ 1981, 1983, 1988 based on alleged acts committed under color of law that deprived Plaintiff of her constitutional right to be free from unreasonable seizure of her person and excessive and unreasonable use of force, pursuant to the Fourth Amendment to the United States Constitution. Am. Compl. [DE-12] ¶¶ 1, 2. Plaintiff also alleges state law claims of assault, battery, negligence, and gross negligence. *Id.* ¶¶ 41-63. Defendants Diana Painter ("Painter"), Charles Matthews, II ("C. Matthews"), Phillip D. Matthews ("P. Matthews") (collectively, the "Officer Defendants"), and Harry Dolan ("Dolan") (Chief of Police for the City of Raleigh at the time of the incident) have been sued in their individual and official capacities. *Id.* ¶¶ 4, 5. Defendant City of Raleigh has been sued as the public employer of the individually named defendants. *Id.* ¶ 6. Defendant Raleigh Police Department has been sued as an agency of the City of Raleigh that employs and supervises the individually named defendants. *Id.* ¶ 7. Plaintiff seeks compensatory and punitive damages, pre-judgment and post-judgment interest, attorney's fees, and costs. *Id.* at 11.

## II. FACTUAL BACKGROUND

The facts taken in the light most favorable to Plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), are as follows. Plaintiff was traveling from Georgia to Washington, D.C., and stopped along the way at a Motel 6 in Raleigh, North Carolina. Am. Compl. ¶¶ 15-16. In the early morning hours of October 21, 2010, Plaintiff left her room and walked toward the motel lobby to purchase snacks. *Id.* ¶ 17. Before Plaintiff reached the lobby, two unknown males began to harass her, and

2

Case 5:13-cv-00732-FL   Document 61   Filed 07/18/14   Page 2 of 20

she then ran toward the motel lobby in search of help, but found no aid. *Id.* ¶¶ 18, 19. After an unspecified period of time, officers from the Raleigh Police Department arrived at the motel and the two unknown males fled. *Id.* ¶ 20. Plaintiff approached Defendants, Officers Diana Painter, C. Matthews, and P. Matthews, in the lighted parking lot to inform them that she was being harassed. *Id.* ¶ 21. As Plaintiff approached unarmed, she was warned to stop, yet was shot multiple times in her chest and extremities by Defendants Painter and P. Matthews. *Id.* ¶¶ 22, 24. Defendant C. Matthews, II, failed to intervene on Plaintiff's behalf to stop the excessive and unreasonable use of force. *Id.* ¶ 23. Plaintiff was rushed to Wake Medical Center, where she was treated for serious injuries. *Id.* ¶ 25. As a result of Defendants' actions and inactions, Plaintiff suffered significant injuries and damages. *Id.* ¶ 26.

### III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a court may dismiss an action which fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the facts pleaded in the complaint and the relevant inquiry is whether the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

The pleading standard set forth in Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

3

*Twombly*, 550 U.S. at 570); *see also Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' as required by Rule 8 . . . ." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 678-79).

## IV. ANALYSIS

### A. Motion to Dismiss of Defendants City of Raleigh and the Raleigh Police Department [DE-35]

#### 1. Municipal Capacity to be Sued

The Raleigh Police Department contends it is an entity not capable of being sued. Defs.' Mem. [DE-36] at 3-4. In the federal courts, the capacity of a governmental body to be sued is governed by the law of the state in which the district court sits. Fed. R. Civ. P. 17(b); *Avery v. Burke Cnty.*, 660 F.2d 111, 113-14 (4th Cir. 1981). "Absent specific statutory authority, only persons in being may be sued in North Carolina." *Davis v. Matroo*, No. 5:13-CV-00233-BO, 2013 WL 5309662, at *2 (E.D.N.C. Sept. 19, 2013) (citing *McPherson v. First Citizens Nat'l Bank*, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954)). There is no such governing statute in North Carolina authorizing suit against a police department. *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5

4

(1988). Thus, "[a] municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued." *Wright v. Town of Zebulon*, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010); *see also Davis*, 2013 WL 5309662, at *2-3 (dismissing Raleigh Police Department as an entity not capable of being sued). Moreover, Plaintiff concedes that the Raleigh Police Department should be dismissed. Pl.'s Resp. [DE-40] at 4. Accordingly, it is recommended that the Raleigh Police Department be dismissed from this action.

### 2. Failure to State a Claim: *Monell* and Negligence Claims

Next, the City of Raleigh contends that Plaintiff has failed to allege sufficient facts to state a § 1983 or state law negligence claim. Def.'s Mem. at 4. The City of Raleigh specifically argues that Plaintiff's claims against it for negligent and grossly negligent training and supervision are based solely on Plaintiff's encounters with the Officer Defendants, that Plaintiff fails to identify any particular deficient policy or unlawful custom or explain how any particular policy failure caused a deprivation of Plaintiff's constitutional rights, and that Plaintiff has made only conclusory allegations insufficient to state a *Monell* or state law negligence claim. *Id.* at 4-5. Plaintiff contends the Amended Complaint contains sufficient facts to support a *Monell* claim. Pl.'s Resp. at 5-6.

Assuming without deciding that Plaintiff has suffered a deprivation of her constitutional rights, the City of Raleigh is only liable for injuries stemming from that deprivation under §1983 "if it causes such a deprivation through an official policy or custom." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Cities are not liable under §1983 based on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). An official policy may arise from written ordinances and regulations, *Carter*, 163 F.3d at 218 (citing *Monell*, 436 U.S. at 690), affirmative decisions of policymaking individuals, *id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-

5

84 (1986)), or omissions of policymakers manifesting "deliberate indifference to the rights of citizens," *id.* (citing *Canton v. City of Harris*, 489 U.S. 378, 388-89 (1989)). An official custom is said to exist where "a practice is 'so persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *Monell*, 436 U.S. at 691). The failure to train municipal personnel may rise to the level of an unconstitutional custom or policy, but only where there is a history of widespread abuse. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983). However, a single act is "normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Id.* Allegations of mere negligence with regard to police training are insufficient to state a claim for municipal liability. *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("Only those deficiencies in police training policies that result from policymaker fault of at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction can give rise to municipal liability[.]").

"Unlike vicarious liability, claims of negligent hiring, retention, supervision, or training are grounded in active negligence by the employer." *Davis*, 2013 WL 5309662, at *5 (citing *Braswell v. Braswell*, 330 N.C. 363, 373-74, 410 S.E.2d 897, 903 (1991)). To establish a state law negligence claim against the city, a plaintiff must prove:

> (1) the specific negligent act on which the action is founded . . . (2) incompetence, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision, . . . ; and (4) that the injury complained of resulted from the incompetency proved.

*Id.* (quoting *Moricle v. Pilkington*, 120 N.C. App. 383, 386, 462 S.E.2d 531, 533 (1995) (citations

6

and quotations omitted)). The burden on the plaintiff is high, and only cases involving notoriously unsuitable employees or allegations of misconduct repeatedly ignored by an employer have been found to have met these elements. *Id.* (citing *Braswell*, 330 N.C. at 372, 410 S.E.2d at 903) (allowing negligent supervision and retention claims, particularly because the supervisor was on notice that employees were repeatedly violating the rights of others)).

Plaintiff relies on the following allegations in the Amended Complaint relevant to the § 1983 claim against the City of Raleigh:

> [The City of Raleigh] permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights complained of herein.
>
> These customs, practices, and/or policies included, but were not limited to, the following:
>
> > a. Failing to adequately train and/or supervise its police officers so as to prevent violations of citizens' constitutional rights;
> >
> > b. Failing to adequately train and/or supervise police officers regarding the proper use of force;
> >
> > c. Failing to adequately supervise, review, and/or discipline police officers whom these Defendants knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct; and
> >
> > d. Failing to adequately train and/or supervise its police officers in the proper policies and procedures for establishing probable cause to arrest and the proper policies and procedures for effectuating an arrest without the use of excessive and/or deadly force.
>
> Defendants' conduct demonstrated a substantial lack of concern for whether an injury resulted.
>
> Defendants' acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries.

Am. Compl. ¶¶ 36-39; Pl.'s Resp. at 5-6. With respect to the negligence claim, Plaintiff alleges that

7

the City of Raleigh "owed Plaintiff a duty to properly and adequately supervise and train all police officers . . . in the proper use of force" and breached its duty, causing significant injury and damage to Plaintiff. Am. Compl. ¶¶ 54-57.

Here, Plaintiff offers only summary legal conclusions in support of her claims against the City of Raleigh, which amount to "nothing more than a 'formulaic recitation of the elements,'" and are inadequate to support a *Monell* claim. *Iqbal*, 556 U.S. at 680-81; *see also Fordham v. Doe*, No. 4:11-CV-32-D, 2011 WL 5024352, at *1, 6 (E.D.N.C. Oct. 20, 2011) (dismissing § 1983 claim against the City of Greenville where similar allegations were found to be conclusory). Plaintiff has failed to specify a policy or custom or any affirmative decision of policymaking individuals that might serve as a basis for municipal liability. *See Evans v. Griess*, No. 7:13-CV-128-BO, 2013 WL 5817239, at *9 (E.D.N.C. Oct. 23, 2013) (dismissing § 1983 claim against the city where plaintiff's complaint focused "almost exclusively on the conduct of the police officers who searched and arrested Plaintiff" and failed to "reference a policy, a custom, an exercise of decision-making authority, or a practice on the part of the City of Jacksonville that colorably could have been the cause of his alleged constitutional injuries").

Moreover, the recent case of *Price v. City of Fayetteville, North Carolina*, No. 5:13-CV-150-FL, 2014 WL 2115335 (E.D.N.C. May 21, 2014), where this court denied a motion to dismiss a § 1983 claim against a city based on the alleged existence of an unconstitutional municipal policy, is distinguishable. In *Price*, a group of evangelical Christians, plaintiffs, were handing out religious material and talking with individuals attending the Dogwood Festival in Fayetteville, North Carolina. *Id.* at *2-3. Plaintiffs were asked by a festival representative to discontinue literature distribution or leave, but refused to do so absent written authority. *Id.* at *3. A police officer then informed

8

plaintiffs that they were violating festival policy and that plaintiffs would be arrested if they did not cease their activities. *Id.* at \*3. The court concluded that plaintiffs had sufficiently alleged "facts permitting an inference that the violation of plaintiffs' First Amendment rights . . . was caused by an existing unconstitutional policy." *Id.* at \*8. The court particularly noted plaintiffs' allegations that the police officer ordered plaintiffs to stop distributing literature under the threat of arrest, that plaintiffs were told "*the police were enforcing the policy of Dogwood Festival, Inc.* that bans literature distribution within festival confines," and that the city caused the violation of plaintiffs' rights by giving the festival discretion to exclude constitutionally-protected speech. *Id.* at \*8-9 (emphasis in the original). The court also rejected defendants' argument that a single interaction with the defendant police officer alleged by plaintiffs was insufficient to establish a municipal policy, explaining that this is a substantive element of proof and not a pleading requirement. *Id.* at \*9. Here, the Amended Complaint contains no factual allegations, such as those in *Price*, from which the court could infer that the city had a policy which led to the violation of Plaintiff's constitutional rights, and Plaintiff alleges only a general failure on the part of the City to train or supervise its police officers. Am. Compl. ¶¶ 36-39. Accordingly, it is recommended that the § 1983 claim against the City of Raleigh be dismissed.

Likewise, with respect to Plaintiff's state law negligence claim, Plaintiff has not pled any facts suggesting the City of Raleigh had the requisite actual or constructive notice that the Officer Defendants were improperly trained, unfit for duty, or had engaged in previous acts of negligence. *See Davis*, 2013 WL 5309662, at \*5 (dismissing failure to train and negligence claims against the City of Raleigh where allegations against the City were similarly lacking). Though Plaintiff insists that discovery will flesh out additional details that will either support or refute this claim, the

9

conclusory allegations of the Amended Complaint are simply insufficient to state a negligence claim against the City of Raleigh for failure to train or supervise the Officer Defendants. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Accordingly, it is recommended that Plaintiff's negligence claims against the City of Raleigh be dismissed.

### 3.     **Official Capacity Redundancy**

An official capacity suit is "'another way of pleading an action against an entity of which an officer is an agent.'" *Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d. 14, 21 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Thus, where the governmental entity may be held liable for damages resulting from its official policy, a suit naming public officers in their official capacity is redundant." *Id.* "An action against officers in their official capacities is simply another way of bringing suit against a municipal employer." *Davis*, 2013 WL 5309662, at *5. The Fourth Circuit has held that official capacity claims are essentially the same as a claim against the entity and should be dismissed as duplicative when the entity is also named as a defendant. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) (affirming a dismissal of an official capacity claim against the superintendent of a school board, holding that it is essentially a claim against the board, also a named party).

Here, Plaintiff's official capacity claims against Defendants Dolan, Painter, C. Matthews, and P. Matthews are duplicative of her claims against the City of Raleigh because "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166; *see also Hatley v. Bowden*, No. 5:13-CV-765-FL, 2014 WL 860538, at *2 n.4 (E.D.N.C. Mar. 5, 2014) (dismissing claims against an officer in her official capacity because they are duplicative

of the claims against the City of Raleigh). Accordingly, it is recommended that all claims against Officers Dolan, Painter, C. Matthews, and P. Matthews in their official capacities be dismissed.

## B. Motion to Dismiss of Defendant Charles Matthews, II [DE-41]

Defendant C. Matthews contends that Plaintiff has failed to plead sufficient facts to state a claim against him for failure to intervene to stop the excessive use of force. Def.'s Mem. [DE-42] at 3. The Fourth Circuit addressed a failure to intervene claim as a theory of "bystander liability" in *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002). According to *Randall*, on a theory of bystander liability, an officer may be liable under § 1983 if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." 302 F.3d at 204. To satisfy the first prong of this test, a bystanding officer must "know of his fellow officer's misconduct." *Id.* at 204 n.24. If the bystander "lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Id.*

In this case, drawing reasonable inferences from the allegations in Plaintiff's favor, Defendant C. Matthews was in the position to evaluate the correctness of his fellow officers' conduct because C. Matthews was present at the scene, had specific knowledge of the other officers' allegedly unconstitutional conduct, and could have had a reasonable opportunity to prevent the harm. *See Randall*, 302 F.3d at 204 (citing *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[I]t is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence . . . .")); *see also Santiago v. McClaskey*, No. 1:12-CV-93, 2014 WL 944723, at *8 (M.D.N.C. Mar. 11, 2014) (allowing failure to intervene claims to survive at the pleading stage of the proceedings);

11

*Moore v. Cease*, No. 7:03-CV-144-FL, Order [DE-37] at 16-18 (E.D.N.C. Feb. 6, 2004) (allowing a plaintiff's § 1983 claim on the basis of bystander liability to survive a motion to dismiss based solely on the allegation of the police officer's presence on the scene), *cited in* 2005 WL 5322794, at *15 (E.D.N.C. July 5, 2005). Ultimately, Defendant C. Matthews' liability will depend on whether Plaintiff can bring forth sufficient evidence to establish that C. Matthews knew that his fellow officers were violating Plaintiff's constitutional rights, had a reasonable opportunity to prevent the harm, chose not to act, and that the other officers were, in fact, engaged in unconstitutional conduct. However, at this stage in the proceedings, Plaintiff has alleged sufficient facts accepted as true to state a plausible claim of bystander liability against C. Matthews, and it is recommended that Defendant C. Matthews' motion to dismiss be denied.

### C. Motion to Dismiss of Harry Dolan in his Individual Capacity [DE-54]

#### 1. Failure to State a Claim

Defendant Dolan contends that Plaintiff has failed to allege sufficient facts to state a claim against him under § 1983. Def.'s Mem. [DE-55] at 4. Dolan specifically argues that Plaintiff has failed to plead a single fact suggesting that Dolan knew of a need to implement any particular policy or that a particular subordinate was incompetent or not sufficiently prepared to properly perform his or her duties. *Id.* at 6. Plaintiff contends the Amended Complaint contains sufficient factual allegations to survive a motion to dismiss. Pl.'s Resp. [DE-59] at 3-4.

"There is no vicarious liability in § 1983 actions; 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Engleman v. Cumberland Cnty.*, No. 5:12-CV-147-FL, 2013 WL 157065, at *7 (E.D.N.C. Jan. 15, 2013) (citing *Iqbal*, 556 U.S. at 676).

12

A supervisor may be liable for the actions of a subordinate only if

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and
>
> (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Further, "a plaintiff 'assumes a heavy burden of proof in establishing deliberate indifference.'" *Id.* (quoting *Shaw*, 13 F.3d at 799). "For a failure to train to rise to the level of deliberate indifference requires that (1) inadequately trained employees engaged in a pattern of unconstitutional conduct or (2) the violation of a federal right is a 'highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Hill v. Robeson Cnty., N.C.*, 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010)). "Generally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel." *Id.* (quoting *Wellington*, 717 F.2d at 936). "Ordinarily, the plaintiff cannot satisfy his burden of proof by pointing to a single incident . . . ." *Shaw*, 13 F.3d at 799. A supervisor "cannot be expected to promulgate rules and procedures covering every conceivable occurrence . . . nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id. Engleman* also noted the similarities between supervisory and municipal liability based on a single incident, explaining, "'[i]t is rare for municipal liability to attach based on the

13

failure to discipline . . . for a single incident.'" 2013 WL 157065, at *7 (quoting *Jones v. Houston*, No. 4:08-CV-121-F, 2010 WL 3835147, at *8 (E.D.N.C. Sept. 28, 2010)).

Here, Plaintiff alleges that Dolan permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights, Am. Compl. at 6, but has not alleged any facts suggesting Dolan "had actual or constructive knowledge that his subordinates were engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff." *Engleman*, 2013 WL 157065, at *7 (quoting *Shaw*, 13 F.3d at 799). Though Plaintiff alleges that Defenants' conduct demonstrated a substantial lack of concern for whether an injury resulted, she does not allege the level of deliberate indifference required with respect to any action or inaction specifically on the part of Dolan. *Id.* Plaintiff does not allege a history of widespread abuse from which to impute knowledge to Dolan, but that is an issue of proof and not determinative at this stage of the proceedings. *See Price*, 2014 WL 2115335, at *9. However, the Amended Complaint here contains no factual allegations, such as those in *Price*, from which the court could infer that Dolan, by his own individual actions, permitted a custom, practice, or policy which led to the violation of Plaintiff's constitutional rights, and Plaintiff only generally alleges a failure by Dolan to train or supervise the police officers. Am. Compl. ¶¶ 36-39. Thus, Plaintiff has failed to allege viable failure to train or supervise claims against Dolan, and it is recommended that Plaintiff's § 1983 claim against Dolan be dismissed for failure to state a claim.

### 2. Public Officer Immunity for State Law Claims

As a basis for dismissal of the state law claims, Defendant Dolan asserts the affirmative defense of public officer immunity. Under the doctrine of public officer immunity, "[p]ublic officials cannot be held individually liable for damages caused by mere negligence in the

14

performance of their governmental or discretionary duties," but instead are liable only where their actions were "corrupt or malicious, or . . . outside of and beyond the scope of [their] duties." *Meyer v. Walls*, 347 N.C. 97, 112, 489 S.E.2d 880, 888 (1997); *see also Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 206, 468 S.E.2d 846, 852 (1996) (holding that the "mere negligence" standard of *Hare* was intended "only as a truncated, or 'shorthand' version of the official immunity doctrine"); *Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236 (1990) (holding that a public official sued individually generally is not liable for mere negligence). A public officer "acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial and injurious to another." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). The act must be "done of wicked purpose, or . . . done needlessly, manifesting a reckless indifference to the rights of others." *Id.* (quoting *Givens v. Sellars*, 273 N.C. 44, 50, 159 S.E.2d 530, 535 (1968)). A showing of malice is difficult to make where "it is presumed that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *In re Annexation Ordinance No. 300-X*, 304 N.C. 549, 551, 284 S.E.2d 470, 472 (1981). "[T]he burden is on [plaintiff] to overcome the presumption [of good faith] by competent and substantial evidence," *id.*, and "every reasonable intendment will be made in support of the presumption [of good faith]," *Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E.2d 681, 687 (1961). Moreover, "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts in the complaint must support such a conclusion." *Meyer*, 347 N.C. at 114, 489 S.E.2d at 890; *see also Dalenko v. Wake Cnty. Dep't of Human Servs.*, 157 N.C. App. 49, 56, 578 S.E.2d 599, 604

15

(2003) (holding a complaint's allegations amounted to conclusions of law and unwarranted deductions of fact and were insufficient to overcome public official immunity).

Here, Plaintiff has made no allegations regarding Defendant Dolan acting with corruption, maliciousness, or beyond the scope of his duties. The allegations of negligence and gross negligence are conclusory and insufficient to overcome Dolan's public official immunity, which bars any State law torts asserted against him. *Shaw*, 13 F.3d at 803; *Santiago*, 2014 WL 944723, at *8; *Fordham*, 2011 WL 5024352, at *9. Thus, it is recommended that Plaintiff's state law tort claims against Defendant Dolan be dismissed based on the doctrine of public official immunity.

### 3. Punitive Damages

Next, Defendant Dolan contends that Plaintiff has failed to raise a viable punitive damages claim against him individually. Def.'s Mem. at 7. The applicable law is as follows:

> (a) Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud
> (2) Malice
> (3) Willful or wanton conduct
>
> (b) The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

N.C. Gen. Stat. § 1D-15(a)-(b). Malice in this context is the same legal standard as set out in the preceding section and will be equally applied. *See supra* § IV.C.2.

In support of their respective positions, both Plaintiff and Defendant Dolan look to *Smith v. Wade*, 461 U.S. 30, 56 (1983), which held that juries "may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or

intent, or when it involves reckless or callous indifference to the federally protected rights of others." Plaintiff contends that "to dismiss the damages claim at this pre-discovery stage of the litigation runs afoul of the established case law, and would rob Plaintiff of the opportunity to collect such damages in the event the case proceeds to trial and a verdict in Plaintiff's favor is rendered." Pl.'s Resp. at 7. However, Plaintiff must first plead sufficient facts to show reckless or callous indifference to her federally protected rights in order to sustain a punitive damages claim. *Iqbal*, 556 U.S. at 678; *Smith*, 461 U.S. at 56.

In *Smith*, an inmate sued a guard and others, alleging that his Eighth Amendment rights had been violated. 461 U.S. at 32. The inmate contended that the guard knew or should have known that the inmate would be assaulted when placed in a cell with another inmate who was prone to fight. *Id.* The court granted punitive damages and held that malicious intent was not required. *Id.* at 51-52. Here, in contrast to *Smith*, Plaintiff alleges a substantial lack of concern and indifference on the part of Defendant Dolan as to whether the injury resulted, but not a reckless or callous indifference. Am. Compl. ¶¶ 38, 39. Moreover, here, Dolan is one link further removed in the chain of alleged causation than was the defendant in *Smith*, where that defendant was directly responsible for placing the inmate in harm's way. *Smith*, 461 U.S. at 32. Finally, having recommended that all claims against Defendant Dolan be dismissed, no punitive damages claim against Dolan may stand. Accordingly, it is recommended that Plaintiff's claim for punitive damages against Defendant Dolan be dismissed.

### D.     Plaintiff's Request to be Granted Leave to Amend

In each of Plaintiff's responses to Defendants' motions to dismiss, Plaintiff argues that she should be permitted to amend her Complaint in the event the court agrees with Defendants that her

17

claims are insufficient to withstand a motion to dismiss. Pl.'s Resp. [DE-40] at 6-7; Pl.'s Resp. [DE-53] at 6; Pl.'s Resp. [DE-59] at 7. Plaintiff cites Federal Rule of Civil Procedure 15(a), which states:

> (a) Amendments Before Trial.
>     (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
>         (A) 21 days after serving it, or
>         (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>     (2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(1)-(2). Plaintiff further relies on *Mayfield v. NASCAR, Inc.*, which holds, "[a] request to amend should only be denied if one of three facts is present: the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." 674 F.3d 369, 379 (4th Cir. 2012). Plaintiff contends that since she has not engaged in any of these negative factors, leave to amend the Amended Complaint should be freely granted.

Plaintiff filed her first Amended Complaint on October 17, 2013. Am. Compl. [DE-12]. Defendants filed their motions to dismiss on December 12, 2013, [DE-35], January 17, 2014, [DE-41], and February 14, 2014 [DE-54]. Having already amended her Complaint once, Plaintiff did not attempt to amend her Amended Complaint within 21 days after service of Defendants' 12(b) motions. Fed. R. Civ. P. 15(a)(1)(A)-(B). While Plaintiff may be correct that she has not engaged in any of these negative factors set out in *Mayfield*, the court cannot so determine at this time because Plaintiff has failed to file a motion to amend, properly supported by a memorandum and proposed amended complaint as required by the Federal Rules of Civil Procedure and this court's

18

Local Rules. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); Local Civil Rule 7.1(d) (requiring motions be supported by an accompanying supporting memorandum); Elec. Case Filing Admin. Policies and Procedures Manual § E(4) ("If filing a document requires leave of court, such as an amended complaint, the attorney shall attach the proposed document as an attachment to the motion . . . ."). As a result, Defendants have not been given an opportunity to brief their positions to the court, and the court is unable to evaluate whether "the amendment would be prejudicial to the opposing party," if "there has been bad faith on the part of the moving party," or if "the amendment would be futile," when no such proposed amendment exists. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). Accordingly, it is recommended that Plaintiff's request to amend be denied without prejudice to file a properly supported motion to amend.

## V. CONCLUSION

For the reasons stated herein, it is RECOMMENDED as follows:

(1) the motion to dismiss of the City of Raleigh and the Raleigh Police Department [DE-35] be GRANTED;

(2) the motion to dismiss of Charles Matthews, II be DENIED [DE-41]; and

(3) the motion to dismiss of Harry Dolan in his individual capacity be GRANTED [DE-54].

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties or the unrepresented parties, who have fourteen (14) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal

19

conclusions not objected to, and accepted by, the District Court.

SUBMITTED, this the 18 day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge